UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FORTUNATO RODELO-LARA, *et al.*,<br><br>    Defendants.<br>_____/ | No. CR-12-0030 EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I. TRIAL DATE & LENGTH OF TRIAL

Jury selection will begin on October 17, 2014 at 8:30 a.m. The trial shall begin on November 3, 2014, Courtroom 5, 17th Floor. The parties expect the trial to last no more than ten court days including opening statements and closing arguments. Trial shall be conducted from 8:30 a.m. to 2:00 p.m. (or slightly longer to finish a witness), with one 15-minute break and one 30-minute lunch break. If necessary, the Court may extend any trial day. Parties must arrive by 8:00 a.m., or earlier as needed for any matters to be heard out of the presence of the jury. The jury shall be called at 8:30 a.m. The trial week is Monday through Friday, excluding holidays. Thursdays are dark, absent further order. Trial will also be dark on November 7, 2014 and November 11, 2014.

## II. PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A. No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are objected to, both counsel shall notify the Court after the jury is excused for the

day, and shall identify the exhibits at issue and the objections. The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B. At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial the day after next. Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C. With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by **Thursday, October 30, 2014, at 5:00 p.m.** If any such exhibits are objected to, both counsel shall notify the Court by **October 31, 2014, at 2:00 p.m.**, and shall identify the exhibits at issue and the objections. The Court will then address the dispute on the first day of trial, November 3, 2014, before any testimony begins.

D. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

E. The Court orders that all pleadings, case captions and jury instructions given or presented to the jury shall not refer to the a.k.a. for either Defendant.

### III. PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B. Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. At the end of each trial day, counsel shall give opposing counsel notice of which witnesses will be testifying on the following day. At that time, counsel shall also provide a tentative preview of witnesses who

are expected to testify the day after next. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C. Only one lawyer for each party may examine any single witness.

D. If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E. Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F. Witnesses shall be excluded from the courtroom until the total completion of their testimony, including rebuttal testimony, if any. *See* Part VII.2.E, *infra*.

### IV. OTHER PROCEDURES AT TRIAL

A. To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or relevancy). There shall be no speaking objections or argument from either counsel unless requested by the Court.

B. Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

### V. STIPULATIONS OF FACT

The Court is informed that the parties have yet to reach any stipulations of fact. The parties further indicated, however, that they are working on several stipulations regarding potentially uncontested facts, such as the accuracy of Spanish language transcripts, the authenticity of telephone records, and the results of drug tests performed on alleged controlled substances seized during the Government's investigation. The parties further indicated during the pretrial conference that they

may be able to stipulate to agree not to refer to the Defendants' immigration status or to firearms used or possessed by Defendants' alleged co-conspirators.

The Court expects the parties to stipulate to those matters (including authenticity and chain of custody) over which there is no reasonable basis for dispute. Accordingly, the parties are **ORDERED** to continue to meet and confer regarding possible stipulations. The parties are further **ORDERED** to file a joint statement no later than **Monday, October 20, 2014**, addressing those facts to which the parties have stipulated. If a dispute remains, they shall specify each such dispute on said date; the joint filing shall state, with particularity, the reasons for disputing the matter.

## VI.   GOVERNMENT'S MOTIONS IN LIMINE

A.   <u>Government's Motion in Limine No. 1 (Docket No. 429): Defendant Admissions Pursuant to Fed. R. Evid. 801(d)(2)(1)</u>

In its first motion in limine, the Government seeks to admit in its case-in-chief Defendants' own out-of-court statements. The Government has indicated that it will principally seek admission of intercepted telephone calls between Defendants and their alleged co-conspirators. The Government may also seek to admit testimony from cooperating co-defendants regarding statements allegedly made by Defendants. The Government correctly notes that the statements of an opposing party are typically admissible against that party pursuant to Federal Rule of Evidence 801(d)(2)(1).

Defendant Almendares-Vasquez does not oppose the Government's first motion in limine. *See* Docket No. 430. Defendant Rodelo-Lara opposed the motion only to the extent that the Government had not yet identified the precise statements it will attempt to admit pursuant to Rule 801(d)(2)(1). *See* Docket No. 431. At the pretrial conference, the Government more precisely identified some of the statements at issue, and Defendant Rodelo-Lara withdrew his objections. The Government's motion is **GRANTED**.

B.   <u>Government's Motion in Limine No. 2 (Docket No. 429): Co-Conspirator Admissions Pursuant to Fed. R. Evid. 801(d)(2)(E)</u>

The Government's second motion in limine seeks admission of certain out-of-court statements made by Defendants' alleged co-conspirators. Federal Rule of Evidence 801(d)(2)(E) provides that statements made by a party's "co[-]conspirator during and in furtherance of the

conspiracy" are admissible as non-hearsay. The Supreme Court has clarified that there are three conditions for admitting such statements: (1) the existence of the conspiracy; (2) the defendant's participation in the conspiracy; and (3) that the statement was made during and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175-76, 181-82 (1987).

Defendant Almendares-Vasquez does not oppose the Government's second motion in limine. *See* Docket No. 430. Defendant Rodelo-Lara similarly does not oppose the motion, but requests that the Court "preserve his right to object to certain statements as they are identified and introduced at trial." Docket No. 431. Because the Government has not identified for the Court the precise statements it intends to admit pursuant to Rule 801(d)(2)(E), nor established that the necessary factual predicates to admissibility under *Bourjaily* have been met, the Court defers ruling on the motion at this time. Defendants may contemporaneously object to particular co-conspirator statements during the course of trial, provided they have a basis therefor. At the hearing, Defendants indicated they did not anticipate a problem.

C.  <u>Government's Motion in Limine No. 3 (Docket No. 429):  Summary Charts Pursuant to Rule 1006</u>

In its third motion in limine, the Government seeks admission of certain summary charts and maps. Specifically, the Government states that it compiled voluminous Global Positioning System (GPS) records during the course of its investigation, which it would like to summarize for the benefit of the jury.

Federal Rule of Evidence 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, [or] recordings . . . that cannot be conveniently examined in court." The Rule further dictates that the "proponent must make the originals or duplicates available for examination or copying, or both, by other parties . . . ." *Id.* The Government states, and the Defendants do not dispute, that the original GPS records are voluminous and have been provided to Defendants.

Defendant Almendares-Vasquez does not oppose the Government's third motion in limine. *See* Docket No. 430. Defendant Rodelo-Lara opposes the motion (at least in part). Rodelo-Lara notes that the Government has "not yet produced the summary charts it wishes to introduce," and

further argues that the Court must be particularly vigilant when admitting summary charts into evidence because of the potential for such evidence to prejudice a defendant. Docket No. 431. As the Ninth Circuit has noted, "precautionary measures should be taken when summary charts are used." *United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984). Specifically, the trial court "should carefully examine the summary charts to determine that everything contained in them is supported by the proof." The *Soulard* court also seemed to call into question the ultimate admissibility of certain summary charts, writing that "[t]he trial court should allow [summary] charts to be used as a testimonial aid for witnesses and as a visual aid for counsel in argument, but should not admit the charts as evidence or allow their use by the jury during deliberations." *Id.* Later panels of the Ninth Circuit, however, have clarified that summary charts that comply with Rule 1006 are themselves admissible "as evidence."[1] *See United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991); *see also* Fed. R. Evid. 1006 advisory committee's note ("The *admission* of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury") (emphasis added).

Because the Government has not provided the Court with a copy of the summary charts it intends to admit during the course of trial, the Court defers ruling on the Government's third motion in limine. The Court further **ORDERS** the Government to produce to Defendants copies of the charts it seeks to admit by **Monday, October 20, 2014**. To the extent Defendants wish to object to specific charts, they will be permitted to do so by **Thursday, October 23, 2014**.

D. <u>Government's Motion in Limine No. 4 (Docket No. 429): Expert Witness Testimony by Law Enforcement Agents</u>

In its fourth motion in limine, the Government seeks to admit the expert opinion testimony of Drug Enforcement Administration (DEA) Special Agent Brian Nehring. Specifically, the Government wishes to present Agent Nehring as an expert witness to testify regarding: (1) the distribution quantities of controlled substances, including cocaine and "crack" cocaine; (2) the

---

[1] By contrast, "charts or summaries of testimony or documents already admitted into evidence are merely pedagogical devices, and are not evidence themselves." *Wood*, 943 F.2d at 1053.

6

1  financial aspects of drug trafficking, as well as prices of cocaine and "crack" cocaine during the time
2  period alleged in the indictment; (3) common methods of distributing, manufacturing, packaging,
3  and transporting cocaine and "crack" cocaine; (4) common methods to conceal drug trafficking
4  activities, including the use of multiple telephones and hidden compartments in vehicles; and (5) the
5  use of coded language by drug trafficking organizations. *See* Docket No. 429 at 5-6.

6  The Government argues that Agent Nehring's testimony is admissible under Federal Rule of
7  Evidence 702, as Agent Nehring possesses specialized knowledge of narcotics-related subject matter
8  that will assist the jury to better understand the evidence and facts in dispute. The Government
9  further notes that the courts routinely permit law enforcement agents to testify as expert witnesses,
10 *see United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir. 1987), and specifically permit law
11 enforcement officers to opine about the subjects Agent Nehring intends to testify regarding. *See,*
12 *e.g.*, *United States v. Younger*, 398 F.3d 1179, 1189-90 (9th Cir. 2005) (affirming admission of
13 expert testimony regarding whether narcotics were more likely possessed for sale or personal use);
14 *United States v. Alonso*, 48 F.3d 1536, 1540 (9th Cir. 1995) (affirming admission of expert
15 testimony regarding common methods employed to avoid detection by law enforcement); *United*
16 *States v. Freeman*, 498 F.3d 893, 901-02 (9th Cir. 2007) (affirming admission of expert testimony
17 regarding encoded drug jargon).

18 Both Defendants oppose the Government's motion to permit Agent Nehring to testify as an
19 expert witness.[2] Defendants argue that Agent Nehring should be prohibited from testifying because
20 the Government has not adequately disclosed the contents of Agent Nehring's testimony, as required
21 by Federal Rule of Criminal Procedure 16(a)(1)(G).[3] That rule provides that "[a]t the defendant's

---

[2] Defendant Almendares-Vasquez opposes the admission of Agent Nehring's testimony through his first and second "offensive" motions in limine, which seek to affirmatively exclude Agent Nehring's testimony. *See* Docket No. 429 at 12-15. Defendant Rodrigo-Lara joins in Almendares-Vasquez's motions. Docket No. 431 at 3. Rather than repeat the substance of its rulings regarding Agent Nehring's testimony when discussing Defendants' own motions in limine, this section constitutes the complete ruling of the Court on both the Government's and Defendants' motions on the subject of Agent Nehring's testimony.

[3] Defendants also argue that Agent Nehring's proposed testimony regarding coded drug language is inadmissible because the Government has not provided a list of the alleged code words that Agent Nehring intends to interpret, nor has the Government provided any information regarding how Agent Nehring could conclude that certain words are in fact drug jargon. *See* Docket No. 429

request, the government must give to the defendant a written summary of any [expert] testimony the government intends to use . . . during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). The Rule further provides that "[t]he summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.*

On September 10, 2014, the Government sent a letter to Defendants disclosing Agent Nehring as a purported expert witness. *See* Docket No. 429-1. The Government's disclosure is woefully inadequate, and comes nowhere close to satisfying the requirements of Rule 16(a)(1)(G). Indeed, the Government's purported "disclosure" does not disclose a single opinion that Agent Nehring might testify too. Rather, the Government's letter simply identifies *topics* that Agent Nehring might opine on. For instance, the Government's letter indicates that Agent Nehring might testify "regarding the distribution quantities of controlled substances." *Id.* This disclosure does not comply with the plain language of the Federal Rules, because this statement in no way "describe[s] the witness's opinions" nor does it provide the "bases and reasons for those opinions." Fed. R. Crim. P. 16(a)(1)(G); *see also United States v. Holland*, 223 F. App'x 891, 893-94 (11th Cir. 2007) (holding that the Government violated Rule 16(a)(1)(G) where it provided only a "terse letter" describing the expert's proposed testimony at a high level of generality).[4] Presumably, Agent Nehring's opinion will be that the precise quantities of controlled substances allegedly found in the possession of the Defendants is typically indicative of possession with intent to distribute, as opposed to possession for personal use. And presumably, Agent Nehring will base this opinion on some experience he has gained during the course of his career with the DEA. But this Court shouldn't have to guess at Agent Nehring's opinions or their underlying bases. More importantly, neither should Defendants. If the Government wants Agent Nehring to testify as to the opinions he has formed about this case, it must disclose each of those opinions (in detail) to the Defendants, along with their corresponding bases. For example, if the Government intends for Agent Nehring to

---

at 13-14. This challenge is completely co-extensive with Defendants attack on the Government's inadequate Rule 16 disclosures. As such, the Court analyzes the two issues together.

[4] The Government's inadequate disclosure in *Holland* is actually fulsome compared to the disclosure here: At least in *Holland* the Government disclosed some ultimate opinion that it intended to prove at trial, albeit without sufficient detail or any supporting basis.

8

testify regarding coded drug language, it must disclose each and every term Agent Nehring intends to opine about, along with the bases for his conclusion that such terms are, in fact, coded drug terminology.[5]

The Government's fourth motion in limine is **DENIED**, and Defendant Almendares-Vasquez's first and second motions in limine are **GRANTED.** The Court will permit the Government one opportunity to supplement its expert disclosures. Any supplement will be due no later than **Monday, October 20, 2014**. If necessary, Defendants will be permitted to file a joint-motion, no longer than 10 pages in length, challenging the Government's supplemental expert disclosure. Any such motion will be due no later than **Wednesday, October 22, 2014**.

E.     Government's Motion in Limine No. 5 (Docket No. 429):  Punishment

The Government's fifth motion in limine seeks to preclude Defendants from "making any reference to any potential sentences, fines, or other penalties that they could face, including deportation." Docket No. 429 at 8. The Government correctly notes the general rule that "it is inappropriate for a jury to consider or be informed of the consequences fo their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).

Defendant Almendares-Vasquez does not oppose the Government's motion. Defendant Rodelo-Lara opposes only to the extent that the Government seeks to prevent defense counsel from making very general statements related to penalty, such as "this case has serious consequences for the defendant," or the "defendant's liberty is at stake in this trial." Rodelo-Lara argues that "[d]efense counsel has a right to argue to the jury that they should take their roles as finders of fact seriously because 'this case has serious consequences for the defendant,' or request that [the jurors] put themselves in the shoes of the defendant and view the facts as they would want their imaginary jury to do if their 'liberty was at stake in this trial.'" Docket No. 431 at 3.

---

[5] At the pretrial hearing, the Court indicated that the Government might meet its obligations under Rule 16 by providing notice of some of the "most important" alleged code words Agent Nehring intends to opine on. Upon further consideration, given the limited universe of code words presumably involved in this case, in order to avoid confusion, dispute or delay at trial, the Court orders the disclosure to be complete; all code words upon which Agent Nehring will opine shall be disclosed.

9

The Government cites no case which holds that high-level and very general statements about the serious nature of the jury's role, such as a statement that "this case has serious consequences for the defendant," is improper. The Court agrees with Rodelo-Lara that these types of generic statements are permissible to focus the jury on the seriousness of their assigned task. That said, defense counsel may not inform the jury of specific punishments their clients may face, or otherwise seek to prejudice the jury in favor of their clients or encourage nullification. Accordingly, the Court **GRANTS** the Government's motion, but without prejudice to the Defendants' ability to make legally proper arguments that focus the jury on the seriousness of its role, without referring to or implying anything about the length of any possible sentence.[6] Of course, the Government is free to contemporaneously object to any argument it believes crosses the line from permissible to impermissible.

F.     Government's Motion in Limine No. 6 (Docket No. 429):  Information Not In Evidence

The Government's sixth motion in limine seeks to preclude defense counsel from referencing "facts in opening statement that they do not reasonably anticipate will be introduced at trial." Specifically, the Government is concerned that defense counsel may refer to the Defendants' personal backgrounds, such as whether they are well-liked in the community or are considered family men, with no intention of presenting admissible evidence to the jury on these points. At the pretrial conference, the Government also expressed concern that Defendant Rodelo-Lara might attempt to introduce evidence regarding his daughter's medical records or his own immigration status. Rodelo-Lara indicated that he is not yet certain what evidence he intends to introduce at trial. The Court thus **ORDERS** both defendants to disclose their full and final witness and exhibit lists to the Government by **Monday, October 27, 2014**. If the Government wishes to challenge any such witness or evidence, it shall file an appropriate motion by **Wednesday, October 29, 2014**.

---

[6] Defendants indicated that they might cross examine testifying cooperators about the potential sentence they faced absent an agreement; generally this is a proper ground for impeachment.

10

1  As it is uncontroversial that defense counsel may not make arguments in an opening
2  statement that they do not reasonably anticipate will be supported by the evidence offered at trial,
3  the Government's motion is **GRANTED**.

4  G.  Government's Motion in Limine No. 7 (Docket No. 429):  Extrinsic Evidence for
5      Impeachment

6  The Government's last motion in limine seeks to preclude the Defendants from admitting
7  extrinsic evidence for the purpose of impeaching Government witnesses.  The Government correctly
8  notes that extrinsic act evidence is typically inadmissible under Federal Rule of Evidence 608(b),
9  subject to certain exceptions.

10 Defendants do not oppose the Government's seventh motion in limine, and represent that
11 they do not intend to seek admission of extrinsic evidence for impeachment purposes in violation of
12 the Federal Rules. Accordingly, the Government's motion is **GRANTED**.

### VII.  DEFENDANTS' MOTIONS IN LIMINE

A.  Defendant Almendares-Vasquez's Motions in Limine

  1.  Almendares-Vasquez's Motions in Limine Nos. 1 and 2 (Docket No. 429): Motion to
      Preclude the Testimony of Special Agent Nehring On The Basis of Inadequate Rule
      16(a)(1)(G) Disclosures; Motion to Preclude Special Agent Nehring From Supplying
      Expert Testimony about Coded Drug Language

In his first and second motions in limine, Defendant Almendares-Vasquez seeks to preclude
DEA Special Agent Nehring from testifying as an expert witness.  Defendant Rodelo-Lara joins in
these motions.  For the reasons outlined above, *see supra* Part VI.D, Defendants' motions are
**GRANTED**.

  2.  Almendares-Vasquez's Motion in Limine No. 3 (Docket No. 429):  Motion to
      Preclude Other Witnesses From Testifying About Coded Drug Language

Defendant Almendares-Vasquez's third and final motion in limine seeks to preclude other
law-enforcement officers besides Agent Nehring from testifying about coded drug language.
Specifically, Almendares-Vasquez argues that law enforcement officers who are not qualified as
expert witnesses may only "offer opinions about coded drug language when referring to ambiguous

United States District Court
For the Northern District of California

1 terminology, when rationally based upon the perception of the witness, and when based on the
2 witness's personal knowledge. Docket No. 429 at 15 (citing *United States v. Reed*, 575 F.3d 900,
3 922-23 (9th Cir. 2009); *Freeman*, 498 F.3d at 902).

4 The Government does not oppose Almendares-Vasquez's motion, as it has no plans to elicit
5 law enforcement testimony on this subject other than Agent Nehring's. Consequently, the motion is
6 **GRANTED**.

7 B. Defendant Rodelo-Lara's Motions in Limine

8 1. Rodelo-Lara's Motion in Limine No. 1 (Docket No. 424): Prohibit Generalized
9 Opinion Testimony

10 Defendant Rodelo-Lara's first motion in limine seeks to preclude the Government from
11 admitting "any and all law enforcement [expert] testimony regarding the general practices of drug
12 traffickers and/or other characteristics of the defendant that approach no more than opinions about
13 the defendant's guilt." At the pretrial conference, counsel for Rodelo-Lara indicated that he is not
14 aware of any generalized opinion testimony that the Government seeks to offer that would be
15 covered by his motion, and further indicated that this motion in limine is largely protective and one
16 he includes in all of his cases. Because there appears to be no current need to prohibit certain
17 classes of expert testimony that may or may not be offered, Rodelo-Lara's motion is **DENIED**
18 without prejudice to a contemporaneous objection should the Government attempt to admit improper
19 expert testimony at trial.

20 2. Rodelo-Lara's Motion in Limine No. 2 (Docket No. 424): Exclude 'Other Acts'
21 Evidence

22 Defendant's second motion in limine seeks to preclude the Government from introducing
23 evidence regarding "any act that does not appear on the face of the indictment." Docket No. 424 at
24 2. Defendant correctly points out that such "other acts" evidence is typically inadmissible, and will
25 not usually be admitted unless the Government provides the defendant with notice of any such
26 evidence that the prosecutor intends to offer at trial. Fed. R. Evid. 404(b)(1)-(2).

27
28

The Government has represented that it "does not anticipate seeking to introduce other acts evidence against defendant Rodelo-Lara." Docket No. 434 at 2. As such, the Government does not oppose the motion. The motion is **GRANTED**.

### 3. Rodelo-Lara's Motion in Limine No. 3 (Docket No. 424): Prohibit Government Vouching

Defendant Rodelo-Lara's third motion in limine seeks to prohibit the Government from vouching for the credibility or reliability of its witnesses. All parties agree that the Government may not express an opinion regarding the credibility of prosecution witnesses or otherwise vouch for a witness. *See United States v. Ortiz*, 362 F.3d 1274, 1279 (9th Cir. 2004) (holding that "it is improper to communicate that a credibility determination has been made by the AUSA, law enforcement agents, or the court, or that the government knows whether the witness is being truthful and stands behind the veracity of the witness's testimony").

While the Government does not substantively oppose Rodelo-Lara's motion, it states that the motion is premature because there is no reason to suspect the Government will vouch for any witness, especially given the Government's concession that such vouching is disallowed under the Federal Rules of Evidence. Because it is undisputed that the Government may not vouch for witnesses, Rodelo-Lara's motion is **GRANTED**.

### 4. Rodelo-Lara's Motion in Limine No. 4 (Docket No. 424): Designate Government Witnesses As Being Under Defense Subpoena

In his fourth motion in limine, Rodelo-Lara "moves for an order designating all government witnesses as under defense subpoena unless released." Docket No. 424 at 4. Rodelo-Lara explains that such an order would be appropriate because government "witnesses noticed for trial occasionally are released by the government without informing the defense, and thereafter become unavailable." *Id.*

The Court appreciates Rodelo-Lara's concerns about losing access to the testimony of the individuals identified on the Government's witness list. The Court is not inclined, however, to designate all such individuals as under defense subpoena. Rodelo-Lara cites no case law precedent for such a request, and the Court believes such a request is unnecessary given that the Government

13

has offered to "advise the defense if it decides not to call any persons included on its witness list." Docket No. 434 at 3. Pursuant to that offer, the Government is hereby **ORDERED** to inform Defendants if it decides not to call any persons included on its witness list as soon as it makes that decision. Additionally, the Defendant may request the Court to instruct government witnesses that do testify that they are subject to recall after the conclusion of their testimony. The Court will entertain such requests on a case-by-case and as needed basis.

At the pretrial hearing, the Court advised counsel that the parties are ultimately responsible for ensuring that critical witnesses are present in court. This may require subpoenaing witnesses as necessary. This Court will entertain such requests as needed. Rodelo-Lara's fourth motion in limine is **DENIED**.

5. <u>Rodelo-Lara's Motion in Limine No. 5 (Docket No. 424): Exclude Government Witnesses From Courtroom</u>

Rodelo-Lara's fifth motion in limine seeks an order excluding all government witnesses from the courtroom during motion hearings, opening and closing statements, and other witnesses' testimony. He also seeks an order requiring the Government's designated case-agent to testify first, before he or she has the opportunity to listen to the testimony of other witnesses. Finally, Rodelo-Lara seeks to prohibit sequestered witnesses from reading other witnesses' testimony in trial transcripts, or otherwise discussing the case with anyone other than counsel.

Rather than oppose Rodelo-Lara's motion, the Government has joined it in large part, and asks that all witnesses (either prosecution or defense) be appropriately sequestered during trial. The Government only opposes Rodelo-Lara's motion to the extent that it would require the Government's case agent to testify first. The Government contends that such a rule would unduly "micro-manage" the prosecution's case. Docket No. 434 at 3.

Federal Rule of Evidence 615 states that "[a]t a party's request, the court *must* order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615 (emphasis added). Only a small handful of witnesses are exempt from Rule 615's requirements. These exempt witnesses include the Defendants and one designated representative of the Government (*i.e.*, the case agent). *See* Fed. R. Evid. 615(a)-(b).

While the plain language of the Rule only requires non-exempt witnesses to be sequestered during "other witnesses' testimony," a number of appellate courts have held that trial judges have discretion to order witnesses sequestered during other parts of the trial, such as during opening statements and pretrial motions hearings. *See United States v. Brown*, 547 F.2d 36, 37 (3d Cir. 1976) (although Rule 615 does not apply to opening statements, trial court has discretion to sequester witnesses during openings); *United States v. West*, 607 F.2d 300, 305-306 (9th Cir. 1979) (although Rule 615 does not apply to motions hearings, trial court has discretion to sequester witnesses during such hearings). The concern expressed by these courts is that "there may exist a danger of improper suggestions [of potential trial testimony] to witnesses during counsel's opening statement" or other similar proceedings where witness testimony or trial themes are summarized. *See Brown*, 547 F.2d at 37. Consequently, the "customary practice is to exercise discretion to exclude prospective witnesses during openings and any arguments or offers of proof when a witness's testimony may be summarized." 4 Weinstein's Federal Evidence § 615.02(2)(a) (Matthew Bender 2d ed. 2014).

Because Rule 615 is mandatory, the Court hereby **ORDERS** all non-exempt witnesses, either prosecution or defense, be excluded from the courtroom while other witnesses are testifying. The Court is also convinced, and so **ORDERS**, that all non-exempt witnesses should be excluded from the courtroom during opening statements and other proceedings where witness testimony may be discussed or summarized, in order to prevent witnesses from tailoring their testimony to counsel's arguments or the (summarized) testimony of other witnesses. The Court notes the Government has not opposed this request.

The Court further **ORDERS** all sequestered witnesses to refrain from reading or reviewing trial transcripts. As one appellate court has explained, the "purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion. The opportunity to shape testimony is as great with a witness who reads trial testimony as with one who hears the testimony in open court." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981). Thus, a witness violates Rule 615 if he or she reads a copy of the trial transcript. *Id.*

15

The Court also **ORDERS** that sequestered witnesses refrain from discussing their own testimony, or the testimony of other witnesses, with anyone besides their respective counsel. As with reading trial transcripts, it would clearly violate the spirit and purpose of a sequestration order to allow a witness who is not permitted to listen to other witnesses' testimony in open court to discuss that testimony with witnesses outside of court.

Finally, the Court defers ruling on Rodelo-Lara's request that the Government's case agent be required to testify first at trial. At the pretrial hearing, counsel for the Government identified DEA Special Agent Katie A. Dorais as its likely case agent. The Government further represented that Agent Dorais is presently unlikely to testify at all, as her testimony regarding authenticity and chain of custody issues will likely be resolved by stipulation. And should Agent Durais testify, her testimony would be narrowly cabined to authenticity and chain of custody issues, and thus unlikely to be "tainted" by listening to the substantive testimony of other Government witnesses. Given these representations, the Court concludes that there is no pressing need for an order requiring the Government's case agent to testify before other Government witnesses.

Rodelo-Lara's fifth motion in limine is **GRANTED** in significant part, and **DENIED** with respect to the request to order the Government's case agent to testify first during the Government's case-in-chief.

      6.    <u>Rodelo-Lara's Motion in Limine No. 6 (Docket No. 424):  Motion For Agent's Notes</u>

Rodelo-Lara's sixth motion in limine seeks discovery of law enforcement agents' rough notes pursuant to Federal Rule of Criminal Procedure 16(a)(E)(i), *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. § 3500.

The Government opposes the motion on several grounds. First, the Government contends that Rodelo-Lara's request for agent notes is untimely and the quantity of rough notes in its possession is voluminous. Second, the Government contends that the notes are not discoverable under Rule 16(a)(E)(i) – which requires the disclosure of items "within the government's possession, custody, or control" that are "material to preparing the defense" – because Rodelo-Lara's motion "in no way articulates how rough notes would be material to preparing the defense, especially given that the defense is in possession of agents' reports." Docket No. 434 at 4. Third,

the Government contends that agent notes need only be turned over pursuant to *Brady* to the extent they contain materially exculpatory information. The Government avers that it has complied with its *Brady* obligations, and thereby tacitly argues that the agents' notes are not discoverable because they do not contain exculpatory material. Finally, the Government contends that agent notes are not discoverable under the Jencks Act because rough notes do not constitute "statements" of the officers.

The Court must decide whether rough notes should be turned over to a defendant on a case-by-case basis. *See United States v. Pisello*, 877 F.2d 762, 768 (9th Cir. 1989); *United States v. Victor Flores*, No. CR 12-119 SI, Docket No. 1151 (N.D. Cal. Jun. 30, 2014). "Where the substance of the rough notes has been memorialized in a formal memorandum, the government is not required to turn over the rough notes" unless the defendant can make some showing that the notes are somehow discoverable because they contain exculpatory information, witness statements, or other information appropriately material to preparing a defense. *Flores*, No. CR 12-119 SI, Docket No. 1151 (N.D. Cal. Jun 30, 2014) (citing *Pisello*, 877 F.2d at 768). For instance, while rough notes typically are not considered "statements" of the officers who prepared the notes for the purposes of the Jencks Act, *see United States v. Reed*, 575 F.3d 900, 921 (9th Cir. 2009), such notes might contain verbatim accounts of witness interviews that must be preserved or produced under the Act. *See United States v. Andersson*, 813 F.2d 1450, 1459 (9th Cir. 1987) ("[U]nder the Jencks Act, an agent's original interview notes with the suspect or potential witness must be preserved or produced.").

At the pretrial hearing, counsel for Rodelo-Lara emphasized that rough notes from interviews and conversations with the alleged co-conspirators whom the Government intends to call as witnesses would be the most important to the defense. The Government did not indicate these notes would be particularly voluminous and agreed to search for and review rough notes specifically relating to these testifying co-defendants. The Government is **ORDERED** to produce all such notes to Defendants by Monday, October 20, 2014, or to file detailed and specific objections to the disclosure of such notes by that date.

The Court reminds the Government that "it is the criminal trial, as distinct from the prosecutor's private deliberations that is the chosen forum for ascertaining the truth about criminal

accusations." *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) (quoting *Kyles v. Whitley*, 514 U.S. 419, 440 (1995)). Thus, this Court expects the "prudent prosecutor will resolve doubtful questions in favor of disclosure" to the Defendants. *Id.* (quotations omitted). Rodelo-Lara's motion is **DENIED** with the exception noted above.

7. Rodelo-Lara's Motion in Limine No. 7 (Docket No. 424): Reservation of Additional Issues

In his final motion in limine, Rodelo-Lara seeks to reserve his right to raise additional issues as they arise. The Court need not take any action on this motion. The Court reminds counsel that any motion or issue that may arise before or during trial should be raised with the Court as soon as is practicable.

## VIII. WITNESSES

Below is a list of the witnesses the Government and Defendants currently intend to call or may call as the need arises. The Government will file a revised, shortened, and final witness list by **Monday, October 20, 2014**. Defendants are ordered to file their own final witness lists (briefly summarizing the expected substance of their testimony) and exhibit lists by **Monday, October 27, 2014**. The parties shall not offer any witness other than those identified on their final witness lists absent good cause and express leave of the Court.

A. Government Witnesses
(1) San Francisco Police Department (SFPD) Homicide Inspector Carl Bonner
(2) Cooperating Co-Defendant
(3) DEA Special Agent William F. Sicord
(4) DEA Special Agent Kenneth Glenn
(5) DEA Special Agent Phil Fee
(6) DEA Special Agent Fred Formas
(7) Cooperating Co-Defendant
(8) Cooperating Defendant
(9) DEA Special Agent Sean Norton
(10) Oakland Police Department Officer Andre Rachal

| | | |
|---|---|---|
| | (11) | SFPD Office Britt Elmore |
| | (12) | DEA Special Agent Sean Manning |
| | (13) | Daly City Police Department Officer Michael Brennan |
| | (14) | San Mateo County Narcotics Task Force Special Agent Dan Guiney |
| | (15) | DEA Senior Forensic Chemist Keith Chan |
| | (16) | Sprint/Nextel Custodian of Records |
| | (17) | DEA Special Agent Brian Nehring |
| | (18) | DEA Special Agent Katie A. Dorais |
| B. | | Defendant Rodelo-Lara's Witnesses |
| | (1) | Modesto Sarabia |
| | (2) | Agusto Juelgas |
| | (3) | Vidal Martin Rodriquez |
| | (4) | Alma Leticia Rodriquez |
| | (5) | David Sanchez |
| | (6) | Omar Barron |
| | (7) | Marcella Rodriquez |
| | (8) | Donna Mendelson |
| C. | | Defendant Almendares-Vazquez's Witnesses |
| | (1) | Butch Marszalec |
| | (2) | Fidel Ventura |

## IX. DEMONSTRATIVES

The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

## X. JURY VOIR DIRE, JURY INSTRUCTIONS, & VERDICT FORM

A. Jury Questionnaire and Voir Dire

The Court has reviewed the parties' jointly proposed jury questionnaire and has approved it, subject to the Court's modifications provided to the parties on October 9, 2014. The parties are

working to further shorten the questionnaire. The Court will promptly review any revised questionnaire and provide further feedback to the parties. The Court shall also give each party a brief opportunity to voir dire the potential jurors after questioning by the Court.

B.Jury Instructions

The parties are **ORDERED** to file a joint revised set of proposed jury instructions by **Monday, October 20, 2014**. The parties shall simultaneously file their objections to any proposed jury instruction(s) that same day. The Court will provide the parties with the Court's proposed jury instructions in advance of the first day of trial and will schedule a process for comments and resolution of any disputes. As discussed at the pretrial conference, neither the jury instructions nor the verdict form shall identify Defendants' a.k.as.

C.Verdict Form

The Court will review the proposed verdict forms and provide a final verdict form before the close of evidence.

IT IS SO ORDERED.

Dated: October 15, 2014

_____
EDWARD M. CHEN
United States District Judge